# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1146 | **DATE** | 10/17/2000 |
| **CASE TITLE** | Kelly Mohr et al vs. WCKG, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant the motion (Doc 26-1) to dismiss Infinity as a party defendant due to misjoinder. Ruling set for November 1, 2000 is stricken as moot. However, the status hearing set for November 1, 2000 at 9:30 a.m. will stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | OCT 17 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 45 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| SCT | courtroom deputy's initials | 00 OCT 17 AM 9:34 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KELLY MOHR and JOHN MYRON,           )
                                      )
                  Plaintiffs,         )
                                      )
      vs.                             )    00 C 1146
                                      )
WCKG, INC., INFINITY BROADCASTING,    )
STEVE DAHL and STEVE DAHL CO.,        )
d/b/a STEVE DAHL COMPANY, INC.,       )
                                      )
                  Defendants.         )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is Defendant Infinity Broadcasting Corporation's ("Infinity's") Motion to Dismiss for Misjoinder. For the following reasons, this Court grants Infinity's motion.

## BACKGROUND

This lawsuit arises from the following allegations. Plaintiffs Kelly Mohr and John Myron ("Mohr" and "Myron") co-hosted a late night radio talk show on radio station WCKG-FM ("WCKG"). Steve Dahl ("Dahl"), a popular radio show host, also worked at WCKG. Mohr and Myron claim that Dahl secretly recorded on tape a private conversation between Mohr and Myron in violation of federal and state laws.

DOCKETED
OCT 17 2000

45

Dahl allegedly allowed other employees to listen to the tape, then broadcast excerpts on at least three occasions during his radio show. In addition, Dahl allegedly communicated the contents of the taped conversation to WCKG management. The contents of the taped conversations allegedly caused management to terminate Mohr and Myron. Mohr and Myron filed a three-count Complaint asserting violations of federal and state wiretapping laws and state privacy laws. The Complaint names as defendants Steve Dahl, Steve Dahl Company, WCKG, Inc. and Infinity.

Infinity now seeks dismissal as a party defendant pursuant to the misjoinder provisions of Rule 21 of the Federal Rules of Civil Procedure. As a parent company, Infinity claims it is not liable for the actions of the radio station management absent evidence that Infinity directed the acts for which liability is sought. Because Mohr and Myron have not developed any facts to support a contention that Infinity directed the acts at issue, Infinity claims it should be dismissed from the case as a party. Infinity notes that Mohr and Myron have had ample opportunity to develop such facts. They deposed two witnesses: Stephen Hildebrandt, Assistant Secretary of Infinity, and Reid Reker, former Director of Operations at WCKG. These depositions lasted a total of 17 hours. In addition, nearly 450 pages of documents have been produced.

The facts discovered thus far are as follows. Infinity is the parent corporation of Infinity Media Corporation ("IMC"). (Hildebrandt Aff. at ¶ 2.) In turn, IMC is the

parent of 53 companies that operate 46 radio stations. (Id.) One of those 53 companies is Infinity Holding Corporation of Orlando ("IHCO"). (Id.) IHCO owns, operates and controls WCKG. (Id.)

IHCO keeps its own separate books and records. (Id. at ¶ 5.) Moreover IHCO, not Infinity, controls the day-to-day activities of WCKG. (Hildebrandt Dep. at 239-45.) IHCO employs WCKG's station manager Michael Disney ("Disney"). (Id. at 194, 244-45.) Disney received authorization to hire Dahl from Dan Mason ("Mason"), Vice President of IHCO. (Id. at 91.) IHCO, not Infinity, contracted with Dahl's corporation. (Def. Reply Exh. B.) Infinity has no business relationship with Steve Dahl. (Hildebrandt Aff. at ¶ 3.)

Mohr and Myron counter that Infinity functions as a "joint employer with WCKG" and hence should not be dismissed. In support of this contention, they point to the statement of Hildebrandt, the Assistant Secretary of Infinity, that Infinity has a need to "bring some degree of control as to policies" employed by member radio stations. (Hildebrandt Dep. at 163.) If individual radio stations do not follow Infinity's rules and policies, they may be subject to some disciplinary action by Infinity. (Id. at 163-64.) Further attempting to tighten the affiliation between Infinity, IHCO and WCKG, Mohr and Myron note that Infinity and IHCO share many of the same officers. (Id. at 32.) One of these shared officers, Dan Mason, wrote WCKG station manager

Michael Disney to express his dismay at Disney's handling of Dahl's conduct. (Pl. Exh. A.) Mason composed the letter on Infinity stationery. (Id.) These facts lead Mohr and Myron to conclude that Infinity and IHCO are "so interrelated in promulgating and enforcing rules of WCKG" that it would be inappropriate to dismiss Infinity for misjoinder.

DISCUSSION

In the past, courts in the Seventh Circuit have used an "integrated enterprise" test to determine affiliate liability. See Sharpe v. Jefferson Distrib. Co., 148 F.3d 676, 678 (7th Cir. 1998); Rogers v. Sugar Tree Prods., Inc., 7 F.3d 577, 582 (7th Cir. 1994). The four factors concerned interrelation of operations, common management, common ownership, and centralized control of labor relations and personnel. See id. In Papa v. Katy Industries, however, the Seventh Circuit criticized the "vagueness" of the factors. 166 F.3d 937, 940 (7th Cir. 1999). The court also took issue with the fact that the factors are unweighted. See id. Without different weight afforded to different factors, two factors may point one way while two point another and thus yield no decision. See id. Accordingly, the Seventh Circuit announced a new approach to affiliate liability that abrogates the integrated enterprise inquiry.[1] See id. at 940-43.

---

[1] The "integrated enterprise" test continues to apply to National Labor Relations Board determinations of (1) whether it has jurisdiction over an employer, and (2) what an appropriate bargaining unit is. See id. at 942.

In Papa, the Seventh Circuit stated the general principle that an affiliate corporation only forfeits its limited liability if it acts to forfeit it. See id. at 941. Corporate acts that forfeit limited liability include failing to comply with statutory conditions of corporate status, misleading creditors of the corporate affiliate, configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the rights of one of the affiliate's employees. See id. The Seventh Circuit identified three particular situations in which companies' actions forfeit their limited liability: (1) where the traditional conditions are present to pierce the corporate veil; (2) where an enterprise splits itself into a number of corporations, each comprised of fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the discrimination laws; or (3) where the parent corporation might have directed the act, practice or policy of which the employee of the subsidiary is complaining. See id. at 940-41. In each of these situations, courts should treat affiliated corporations as a single employer. See id.

Although Papa explicitly addressed claims under federal antidiscrimination laws, the Seventh Circuit announced the broad application of these affiliate liability principles "across the full range of American law" unless a particular statute provides an alternate test. Id. at 941; see also Jefferson v. Ingersoll Int'l, Nos. 98 C 50042, 99 C 50362, 2000 WL 28256, at *7 (N.D. Ill. Jan. 4, 2000) (stating that "[n]o matter if the

issue is whether a small employer falls within the discrimination laws' coverage or whether a parent and subsidiary are considered a single employer, the policy considerations are the same"); EEOC v. Foster Wheeler Constr., Inc., No. 98 C 1601, 1999 U.S. Dist. LEXIS 10565, at *20-22 (N.D. Ill. July 6, 1999) (finding no indication that Papa is limited solely to small employer situations). Despite the broad application of Papa, Mohr and Myron assert in their brief that the integrated enterprise test applies to the issue at hand. This assertion is erroneous. Papa's guiding principles, not the "integrated enterprise" test, apply to the instant issue of whether Mohr and Myron can properly seek to impose liability upon parent company Infinity.

We find that Mohr and Myron have failed to establish any conditions that would justify overriding Infinity's limited liability. Mohr and Myron contend that Infinity and IHCO are "integrated enterprises" because they have several overlapping officers and because a letter written on Infinity stationery reprimanded station manager Disney's mishandling of the events underlying this lawsuit. Even if Mohr and Myron have sufficiently shown integrated enterprises, integration alone is not enough to impose affiliate liability under Papa. See 166 F.3d at 943. On the facts presented in Papa, the Seventh Circuit refused to impose affiliate liability despite the appearance of a high degree of integration. See id. at 942. The parent company had the authority to order a layoff at the subsidiary, fixed the salaries of the subsidiary's employees,

administered the subsidiary's pension plan, and funded the subsidiary. See id. at 939. Notwithstanding the evidence of integration, the court found no liability on the part of the parent company. See id. Similarly, in Jefferson v. Ingersoll International, Inc., the court imposed no liability upon a parent company where there was substantial evidence of integration with its subsidiary. 2000 WL 28256 at *9. There, three companies used a single fringe benefits coordinator, shared a computer system, and had some overlap among officers. See id. at *7. Nonetheless, affiliate liability was not warranted because each company observed corporate formalities sufficient to maintain separate corporate identities. See id. at 8. Moreover, the court found no suggestion that the parent company had directed, commanded or undertaken the personnel action at issue. See id. at 9.

Thus, a showing of integration is not tantamount to affiliate liability. Instead, plaintiffs must show that the corporation neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims. See Papa, 166 F.3d at 943. Mohr and Myron have furnished no evidence of Infinity's failure to observe corporate forms. The facts before us indicate that Infinity is a third-generation parent of WCKG which observes corporate formalities such as keeping separate books from IHCO. Moreover IHCO, not Infinity, hired Steve Dahl. IHCO, not Infinity, executed the employment contract with Dahl. These facts do not illustrate

neglect of corporate forms, and Mohr and Myron have provided nothing further to justify piercing the corporate veil.

Nor do we discern any acts by Infinity that would forfeit their limited liability. Mason may have written a letter to Disney on Infinity letterhead expressing "disappoint[ment]" and "bewilder[ment]" over Disney's management of the Dahl situation and threatening future disciplinary measures unless the situation improved, but that letter does not constitute an act that forfeits limited liability. To the contrary, the letter merely expresses retrospective concerns and prospective measures without issuing any direct commands. Moreover, those prospective measures are worded very generally, suggesting that IHCO and WCKG continued to maintain day to day control over the radio station without any meaningful intervention by Infinity. Indeed, the letter reminds Disney that "the station, under your direction," had inadequate procedures in place regarding a proper delay station. (Emphasis added.) The letter further charged Disney with neglecting his duties as general manager in not discussing with Dahl the ramifications of commenting over the airwaves on pending litigation. Thus the letter makes clear that the burden fell upon Disney and IHCO, not Infinity, to respond appropriately to continuing problems with Dahl. It does not, as Mohr and Myron would claim, constitute an action that forfeits Infinity's limited liability as a third-generation parent company.

In light of the absence of evidence indicating either the appropriateness of piercing the corporate veil or an affirmative act by Infinity to forfeit its limited liability, we find no occasion to impose affiliate liability on Infinity. Accordingly, we dismiss Infinity as a party defendant.

## CONCLUSION

For the foregoing reasons, we grant the motion to dismiss Infinity as a party defendant due to misjoinder.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: October 17, 2000